J-S45008-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :    IN THE SUPERIOR COURT OF
                                                  :            PENNSYLVANIA
                       Appellee          :
                                                        :
                         v.                        :
                                                         :
AMY MACHALETTE                         :
                                                         :
                       Appellant       :            No. 654 EDA 2016

Appeal from the Judgment of Sentence October 2, 2015
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0012069-2013

BEFORE:    GANTMAN, P.J., PANELLA, J., and STRASSBURGER, J.*

MEMORANDUM BY GANTMAN, P.J.:         **FILED AUGUST 07, 2017**

Appellant, Amy Machalette, appeals from the judgment of sentence entered in the Philadelphia County Court of Common Pleas, following her bench trial convictions of aggravated assault, possessing instruments of crime ("PIC"), recklessly endangering another person ("REAP"), and simple assault.[1]  We affirm.

In its opinion, the trial court fully and correctly sets forth the relevant facts of this case.  Therefore, we have no need to restate them. Procedurally, on October 1, 2013, the Commonwealth charged Appellant with aggravated assault, PIC, REAP, and simple assault.  On October 3,

_____

[1] 18 Pa.C.S.A. §§ 2702(a)(1), 907(a), 2705, 2701(a), respectively.

_____

*Retired Senior Judge assigned to the Superior Court.

2013, Appellant filed a suppression motion, which claimed Detective Druding continued to question her after she had asked for an attorney while in police custody on September 9, 2013. After an April 4, 2014 hearing, the court denied the motion on April 10, 2014. Appellant proceeded to a bench trial on July 6, 2015. On July 9, 2015, the court convicted Appellant of aggravated assault, PIC, REAP, and simple assault. The court deferred sentencing pending the preparation of a pre-sentence investigation ("PSI") report.

On October 2, 2015, the court sentenced Appellant to an aggregate term of forty (40) to eighty (80) months' incarceration, followed by five (5) years' probation. On October 8, 2015, Appellant timely filed a post-sentence motion, which the court denied on February 19, 2016. Appellant timely filed a notice of appeal on February 26, 2016. On March 2, 2016, the court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P.1925(b), and Appellant timely complied on April 4, 2016.

Appellant raises the following issues for our review:

> DID NOT THE TRIAL COURT ERR IN DENYING APPELLANT'S MOTION TO SUPPRESS THE STATEMENT THAT WAS TAKEN FROM APPELLANT WHILE SHE WAS IN CUSTODY AND INVOKED HER 6TH AMENDMENT RIGHT TO SPEAK WITH COUNSEL BEFORE ANSWERING FURTHER QUESTIONS?
>
> WAS NOT THE EVIDENCE INSUFFICIENT TO SUPPORT THE CONVICTION FOR AGGRAVATED ASSAULT UNDER [SECTION] 2702[?] THE EVIDENCE FAILED TO ESTABLISH THAT…APPELLANT POSSESSED A WEAPON AND

INTENTIONALLY SHOT [VICTIM] WHILE INTENDING TO CAUSE SERIOUS BODILY INJURY. DID THE COMMONWEALTH FAIL TO SHOW THAT APPELLANT INTENTIONALLY SHOT [VICTIM] OR ACTED WITH MALICE MANIFESTING AN EXTREME INDIFFERENCE TO THE VALUE OF HUMAN LIFE?

(Appellant's Brief at 3). [2]

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Daniel J. Anders, we conclude Appellant's issues on appeal merit no relief. The trial court opinion comprehensively discusses and properly disposes of the questions presented. (*See* Trial Court Opinion, filed October 4, 2016, at 5-9) (finding: **(1)** Detective Druding interviewed Appellant on day of shooting; prior to start of interview, Detective Druding read Appellant her *Miranda* rights and asked Appellant if she understood her rights; Appellant responded that she understood her rights and signed *Miranda* waiver form; when Detective Druding asked Appellant whom she shot, Appellant replied, "My dad said I should get a lawyer"; Detective Druding immediately stopped interview and reiterated to Appellant that it was her decision to get attorney; after brief silence, Appellant started talking about shooting and stated she shot Victim; as result, Detective Druding continued interviewing Appellant;

---

[2] Throughout the trial court proceedings and on appeal, Appellant has erroneously labeled the suppression issue as a denial of her Sixth Amendment right to counsel. Nevertheless, Appellant's claim actually challenges the alleged denial of her Fifth Amendment right to counsel during a custodial interrogation.

significantly, Appellant did not attempt to stop interview at any time or make any other reference to attorney during interview; additionally, Appellant reviewed and signed her statement upon completion of interview; under these circumstance, Appellant did not "unambiguously" invoke her right to counsel, and court properly denied suppression motion; **(2)** Commonwealth presented ample evidence at trial, which established Appellant intentionally shot Victim at close range without justification; this evidence included Appellant's statement to Detective Druding in which Appellant said she aimed low and shot Victim when Victim made fist to punch Appellant; Victim did not sustain serious bodily injury only because bullet struck her cellphone; fact that bullet hit cellphone instead of Victim's thigh did not preclude finding that Appellant had specific intent to cause serious bodily injury to Victim; thus, sufficient evidence supported Appellant's conviction of aggravated assault). Accordingly, we affirm on the basis of the trial court's opinion.

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/7/2017

- 4 -



IN THE COURT OF COMMON PLEAS OF PHILADELPHIA
FIRST JUDICIAL DISTRICT OF PENNSYLVANI
TRIAL DIVISION - CRIMINAL

COMMONWEALTH OF PENNSYLVANIA     :     CP-51-CR-0012069-2013

                 : 

VS.                          :     654 EDA 2016

                 : 

AMY MACHALETTE               : 

**FILED**

OCT 0 3 2016

Criminal Appeals L
First Judicial District (

OPINION

     Following a non-jury trial, Defendant Amy Machalette was convicted of aggravated assault, possession of an instrument of crime ("PIC"), recklessly endangering another person, and simple assault. The trial court sentenced Defendant to a guideline sentence of 40 months to 80 months of incarceration. Defendant filed a timely appeal in which she argues that: (1) the suppression court erred by denying her motion to suppress her statement to the police,[1] and (2) the evidence was insufficient to support the convictions of aggravated assault and PIC. For the reasons stated below, the Superior Court should affirm the judgment of sentence.

FACTUAL BACKGROUND

     1.   Defendant shot Chauncia Harris with a firearm

     On September 9, 2013, Chauncia Harris went to the home of her boyfriend Kelly Sauveur located at 3964 N. Smedley Street in Philadelphia. Sauveur is the father of Harris's children. Harris went to Sauveur's home to pick-up diapers for her children. Sauveur answered the door and let Harris inside his home. When Harris walked into the house, she observed Defendant resting on the sofa in the living room. Defendant was in a romantic relationship with Sauveur at the same time that he was in a romantic relationship with Harris. When Harris saw Defendant, she told Defendant that she had 5 minutes to leave the house. Harris paced inside the house for several minutes because she was upset that Defendant was at Sauveur's house. Harris then moved toward the front door. As she did so, Defendant stood up and said to Sauveur about

---

[1] Defendant's motion to suppress was denied by the Honorable Michael Erdos.

Harris, "She thinks she's tough." Harris then went outside to smoke a cigarette. N.T. 07/06/2016 at 22-29, 29-32.

Shortly thereafter, Defendant exited the house and went to her car. Harris was standing near the front door of Sauveur's house. Defendant then walked back toward the house at which point Harris told Defendant that she should tell her mother and father about Defendant's relationship with Sauveur. In response to Harris's comments, Defendant pulled a black Taurus .38 caliber revolver from under her shirt and fired one shot directly at Harris's thigh from a few inches away. The bullet struck Harris's cell phone, which was in the front center pocket of her hoodie, and then grazed her inner left thigh. At the time of the shooting, Harris did not say anything to Defendant, had nothing in her hands and made no threats toward Defendant. *Id.* at 32-48.

Harris called police when she returned home. Philadelphia Police Officer Younger arrived at Harris's home. Harris told Officer Younger that Sauveur's girlfriend had shot her with a black handgun. Harris was taken to Temple Hospital where she was treated for bruises to her left thigh. While at the hospital, Harris provided a written statement to Detective John Druding in which she identified Defendant as the person who shot her. Detective Druding then presented Harris with a photo array in which Harris positively identified Defendant. Detective Druding also recovered Harris's cell phone and hoodie. Harris's cell phone had a bullet hole through it; the hoodie that Harris wore had a bullet hole through the front center pocket. *Id.* at 51, 58; N.T. 07/07/2015 at 147- 154.

On the same day as the shooting, Springfield Township Detective John Cotton went to Defendant's home in Montgomery County where she resided with her parents. Defendant was not home when Detective Cotton arrived. Detective Cotton told Defendant's father that she was involved in a shooting in Philadelphia and that the Philadelphia Police were preparing a warrant

-2-

to search the home for the gun. Defendant's father then led Detective Cotton into his kitchen and gave Defendant's gun to Detective Cotton. Detective Cotton recovered a black Taurus .38 caliber revolver loaded with four rounds live rounds and one spent round from Defendant's home. N.T. 07/07/2015 at 60-63, 155.

Defendant gave a statement to Detective Druding on the day of the shooting. In her statement, Defendant admitted that, earlier in the day, she had shot Harris with her Taurus .38 revolver outside of Sauveur's residence. Defendant stated that she did not see anything in Harris's hands when she shot her. She also told Detective Druding that Harris made a fist to punch her. In response, Defendant said she took out her gun, aimed the gun low and shot Harris. Defendant also told Detective Druding about a prior incident where Harris went after her with a pole. *Id.* at 160-169.

2. Defendant's Testimony At Trial

At trial, Defendant testified that she had three prior confrontations with Harris. Three days before this shooting, she overheard Harris say – while she was on the phone with Sauveur – that Harris would kill Defendant the next time she saw her. On the day of the shooting, after Harris saw her in the house, Harris kept saying that she was going to "fuck up" Defendant. Defendant decided to leave the house after Harris arrived. While she was at her car, Harris pushed Defendant from behind. Harris told her, "There is no one to save you now." In response, Defendant pulled out her gun and took a step back. She saw Harris take her right hand out of her hoodie and lunge toward Defendant. The gun went off but Defendant testified that she did not aim it at Harris nor did she intend to shoot her. N.T. 07/08/2015 at 135-216.

3. Trial Court's Credibility Determination

In making a credibility determination, the trial court considered all of the evidence presented at trial, including whether Defendant acted in self-defense. The trial court also

observed Defendant's and Harris's demeanor and manner of testifying at trial. The trial court also considered the extensive cross-examination of Harris, including her admission that she lied in her statement to police in order to protect her boyfriend Sauveur. Weighing all of these factors and evidence, the trial court chose to discredit Defendant's testimony and to credit Harris's testimony regarding the shooting.

### 4. Defendant's statement to Detective Druding

Detective Druding interviewed Defendant on the day of the shooting. Prior to starting the formal interview, Detective Druding read to Defendant all of the *Miranda* warnings on the first page of the three-page interview form. He then asked whether she understood her rights; Defendant replied that she did. Detective Druding then gave Defendant the form to review and sign. After reviewing the form, she signed the bottom of the first page where each of the *Miranda* warnings were listed. After she signed the form, Detective Druding's first question to Defendant was, "Who did you shoot today." Defendant replied, "My dad said I should get a lawyer."[2] In response to her statement, Detective Druding put the pen down, leaned back in his chair and told her, "Well, it's up to you, what do you want to do?" Detective Druding testified, "There was silence between us for a few seconds and then she said I shot Chauncia Harris so I resumed [sic] my pen and wrote down that answer and we continued with the questions and answers." At the end of the interview, Defendant reviewed and signed each page of the statement. N.T. 04/04/2014 at 11-17, 24-30.

---

[2] During cross-examination at the suppression hearing, Detective Druding repeatedly denied that Defendant said that she "was told to wait for a lawyer." Also at the suppression hearing, Defendant testified that she told Detective Druding that her dad told her to wait for a lawyer. N.T. 04/04/2014 at 25-27, 41-43. The Suppression Court chose to credit Detective Druding's testimony over Defendant's testimony. N.T. 04/10/2014 at 11.

-4-

<u>DISCUSSION</u>

      1.     The Suppression Court Properly Denied Defendant's Motion
            To Suppress Because Defendant Did Not Invoke Her Right To Counsel

On appeal, Defendant argues that the suppression court erred in denying a motion to suppress her statement to Detective Druding that was given "after she repeatedly stated that she would like to exercise her 6th amendment right to speak with an attorney before proceeding further."[3] Concise Statement of Matters Complained Of On Appeal, at ¶ 1.

The standard of review in an appeal from an order denying a motion to suppress is as follows:

> Our standard of review in addressing a challenge to the denial of a
> suppression motion is limited to determining whether the
> suppression court's factual findings are supported by the record
> and whether the legal conclusions drawn from those facts are
> correct. Because the Commonwealth prevailed before the
> suppression court, we may consider only the evidence of the
> Commonwealth and so much of the evidence for the defense as
> remains uncontradicted when read in the context of the record as a
> whole. Where the suppression court's factual findings are
> supported by the record, we are bound by these findings and may
> reverse only if the court's legal conclusions are erroneous.

*Commonwealth v. Jones*, 988 A.2d 649, 654 (Pa. 2010).

In *Miranda v. Arizona*, 384 U.S. 436 (1966), the United States Supreme Court held that, pursuant to the Fifth Amendment, a "suspect subject to custodial interrogation has the right to consult with an attorney and to have counsel present during questioning." *Davis v. United States*, 512 U.S. 452, 457 (1994). "When an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only

---

[3] Although counsel argues a violation of the Sixth Amendment, the Sixth Amendment right to counsel attaches only "at the initiation of adversary criminal proceedings, and, before proceedings are initiated, a suspect in a criminal investigation has no constitutional right to assistance of counsel" under the Sixth Amendment. *Davis*, 512 U.S. at 457. Here, Defendant's alleged invocation of her right to counsel occurred during the criminal investigation and before the initiation of criminal proceedings. As such, the trial court analyzes whether there was a violation of her Fifth Amendment right to counsel.

that he responded to further police-initiated custodial interrogation even if he has been advised of his rights." *Commonwealth v. Martin*, 101 A.3d 706, 725 (Pa. 2014) (citing *Edwards v. Arizona*, 451 U.S. 477 (1981)). The Commonwealth bears the burden of establishing whether a defendant knowingly and voluntarily waived his *Miranda* rights. *Commonwealth v. Pruitt*, 325, 951 A.2d 307, 318 (Pa. 2008).

The determination of whether the right to counsel was invoked by the accused is an objective inquiry. *Davis*, 512 U.S. at 458-59. The accused must unambiguously request counsel. *Id.* at 459. The accused must "articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." *Id.* Police interrogation need not cease if the accused makes an "ambiguous or equivocal [reference to an attorney] that a reasonable officer in light of the circumstances would have understood only that the suspect *might* be invoking the right to counsel." *Id.* (emphasis in original).

In *Commonwealth v. Woodard*, 129 A.3d 480 (Pa. 2015), a defendant stated to police during his interrogation that he spoke to an attorney two days before on an unrelated criminal matter and that the attorney warned him not to speak with police without an attorney present. Although the defendant told police the name of his attorney, he did not request that his lawyer or any other lawyer be present during questioning by the police. The defendant indicated that he understood his *Miranda* rights, did not indicate to police that he would not speak without his attorney present, and did not attempt to stop the interview due to the lack of counsel. In those circumstances, the Pennsylvania Supreme Court held that the defendant did not make a clear, unambiguous invocation of his right to counsel under *Miranda*. *Id.* at 497-99.

Here, prior to the interview, Detective Druding read Defendant her *Miranda* rights and then asked her to sign the page that listed those rights. He then asked her whether she understood

-6-

her *Miranda* rights, to which Defendant replied that she did. Detective Druding then asked Defendant, "Who did you shoot today?" Defendant responded, "My dad said that I should get a lawyer." Detective Druding immediately stopped the interrogation and told her, "Well, it's up to you, what do you want to do?" Five seconds later, Defendant – without initiation of further questioning by Detective Druding – began to talk about the shooting. At no time did Defendant attempt to stop the interview. In fact, at the end of the interview, she reviewed and signed her statement. At no other point during the interview, did she mention or refer to any attorney.

In light of all of these circumstances, Defendant did not unambiguously invoke her right to counsel. As a result, the suppression court properly denied Defendant's motion to suppress.

## 2. There is Sufficient Evidence to Support the Verdict

Also on appeal, Defendant asserts that the evidence was insufficient to support her convictions of aggravated assault and PIC because the evidence (1) "failed to establish that Defendant possessed a weapon and shot [Harris] intending to cause serious bodily injury," and (2) failed to establish that Defendant "possessed and fired the weapon in this case." Concise Statement of Matters Complained Of On Appeal, at ¶ 2.

In reviewing the sufficiency of the evidence, an appellate court must determine whether the evidence at trial was sufficient to establish all elements of the crime beyond a reasonable doubt. *Commonwealth v. Bradley*, 69 A.3d 253, 255 (Pa. Super. 2013). In doing so, the appellate court views all of the evidence and reasonable inferences therefrom in a light most favorable to the Commonwealth as verdict winner. *Id.* Further, a conviction may be sustained wholly on circumstantial evidence, and the trier of fact – while passing on the credibility of the witnesses and the weight of the evidence – is free to believe all, part or none of the evidence. *Id.* In conducting this review, the appellate court may not reweigh the evidence nor substitute its judgment for the fact-finder. *Id.*

-7-

a.	There Is Sufficient Evidence To Support The Aggravated Assault Conviction.

A person is guilty of aggravated assault in the first degree if he or she attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly, or recklessly under circumstances manifesting extreme indifference to the value of human life. 18 Pa.C.S. § 2702(a)(1). "Serious bodily injury" is bodily injury that creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of function of any bodily member or organ. 18 Pa.C.S. § 2301. A person acts intentionally when it is his conscious object to engage in conduct of that nature or to cause such a result. *Commonwealth v. Martuscelli*, 54 A.3d 940, 948 (Pa. Super. Ct. 2012).

If the victim does not sustain serious bodily injury, the Commonwealth must prove that the defendant acted with the specific intent to cause serious bodily injury. The Commonwealth may prove intent to cause serious bodily injury by circumstantial evidence. *Commonwealth v. Lewis*, 911 A.2d 558, 563 (Pa. Super. Ct. 2006) (finding that a victim with multiple swollen areas on her face and neck, and multiple cuts and lacerations on her face and inside of her mouth sufficient evidence of serious bodily injury or intent to inflict serious bodily injury); *Commonwealth v. Rodriquez*, 673 A.2d 962 (Pa. Super. Ct. 1996) (finding that a victim that was punched and kicked multiple times while lying on the ground was sufficient evidence for a fact-finder to infer an attempt to cause serious bodily injury). The fact that a victim avoided further injury by his or her own efforts or by the efforts of an intervening party does not preclude a finding of the requisite intent of a defendant's attempt to cause serious bodily injury. *Commonwealth v. Dailey*, 828 A.2d 356 (Pa. Super. Ct. 2002).

Here, Defendant used a firearm to shoot Harris in her thigh from only inches away. There was no justification for the shooting.[4] Harris avoided suffering serious bodily injury only because

---

[4] As discussed above, *supra* at 4, the trial court credited Harris's testimony as to how the shooting occurred.

the bullet hit a cell phone that was in her hoody pocket. If the bullet entered the thigh instead of hitting the cell phone, it would have caused serious bodily injury, permanent disfigurement, or protracted loss or impairment of function of her thigh. Defendant's intentional shooting of Harris without justification and at a distance of only inches from her thigh is evidence of her specific intent to attempt to cause serious bodily injury to Harris. The fact that the bullet hit the cell phone instead of entering the thigh does not preclude the finding of requisite intent. Viewed in a light most favorable to the Commonwealth as verdict winner, there is sufficient direct and circumstantial evidence to support the conviction for aggravated assault in the first degree.

b.     There Is Sufficient Evidence To Support The Conviction For PIC

To support the conviction for possession of an instrument of crime, the Commonwealth must have proven beyond a reasonable doubt that Defendant possessed an object that she intended to use for a criminal purpose. 18 Pa.C.S. § 907. The Crimes Code defines an instrument of crime as including anything used for criminal purposes and possessed under circumstances not manifestly appropriate for lawful uses it may have. *Id.*

As discussed above, *supra* at 8-9, Defendant shot Harris with the intent to cause serious bodily injury to her. Viewed in a light most favorable to the Commonwealth as verdict-winner, these facts are more than sufficient evidence to support the possession of an instrument of crime conviction.

CONCLUSION

For the foregoing reasons, the appellate court should affirm the judgment of sentence.

BY THE COURT:

DANIEL J. ANDERS, JUDGE
Dated: October 3, 2016

-9-

**Comm. v. Amy Machalette**
**CP-51-CR-0012069-2013**

## PROOF OF SERVICE

I hereby certify that I am this day caused to be served the foregoing Order upon this person(s):

Attorney for Appellant:    Andrew D. Montroy, Esquire
1500 Walnut Street, 22nd Floor
Philadelphia, PA 19102

Type of Service:    Regular Mail

Appellee:    Hugh J. Burns, Jr., Esquire
Philadelphia District Attorney's Office
3 S. Penn Square
Philadelphia, PA 19107

Type of Service:    CJC Mailbox

DATED: 10 | 3 | 2016

Raymond T. Dorizio, Esquire
Law Clerk to Hon. Daniel J. Anders